# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**JOSEPH BANASIAK**
Highland, Indiana

ATTORNEY FOR APPELLEE:

**JOSEPH STALMACK**
Joseph Stalmack & Associates, P.C.
Munster, Indiana

**FILED**
Mar 08 2012, 9:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GLADYS E. CURRY and THOMAS CURRY, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1106-CT-290 |
| | ) | |
| D.A.L.L. ANOINTED, INC., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable John R. Pera, Judge
Cause No. 45D10-0910-CT-190

**March 8, 2012**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Gladys E. Curry ("Gladys") and her husband, Thomas Curry ("Thomas")(collectively "the Currys"), appeal from the trial court's order dismissing their complaint for injuries and loss of consortium against D.A.L.L. Anointed, Inc. ("D.A.L.L."). The Currys present several issues for our review, the following of which is dispositive: Whether the trial court erred by dismissing the complaint for lack of subject matter jurisdiction based on the exclusivity provision of the Indiana Worker's Compensation Act ("the Act").[1]

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts that were before the trial court follow. D.A.L.L. operated a McDonald's Restaurant located in Hammond, Indiana. Gladys was employed by D.A.L.L. at that McDonald's Restaurant. On October 15, 2007, Gladys went to the restaurant to attend an employee meeting scheduled to begin at 5:00 p.m., but arrived at the restaurant at approximately 3:45 p.m. in order to eat a meal beforehand. Some of the employee meetings were mandatory, but Gladys could not recall whether that meeting was mandatory. She was not scheduled to work and did not clock in as she would if she were working. Gladys could not recall if she received any pay for attendance at the meeting.

After ordering her meal, Gladys went outside the restaurant to eat her food in an outdoor dining area. While Gladys was outdoors, other employees gathered for the upcoming meeting. Gladys finished her meal and got up to take her tray and garbage to an outdoor garbage can when she tripped over a hazard on the ground in the outdoor dining area. Gladys

---

[1] *See* Ind. Code § 22-3-2-6.

2

fell to the ground and sustained injuries. A fellow employee drove Gladys to a hospital for treatment for her injuries.

D.A.L.L.'s worker's compensation insurance carrier requested that she treat with a physician selected by the carrier and she did so. The medical bills related to that treatment were paid by D.A.L.L.'s worker's compensation insurance carrier, as were additional medical bills submitted by Gladys. The worker's compensation insurance carrier also made wage payments to her.

The Currys filed a complaint against D.A.L.L., McDonald's Corporation, and Franchise Realty Corporation, seeking damages for injuries sustained by Gladys and for medical expenses incurred by Thomas for her care and for his related loss of consortium claim. By stipulation of the parties, McDonald's Corporation and Franchise Realty Corporation were dismissed from the case. D.A.L.L. filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(1) and designated evidence in support. The Currys filed their response to the motion to dismiss and a list of evidence. D.A.L.L. filed a reply in support of the motion to dismiss and moved to strike certain portions of Gladys's affidavit to the extent it conflicted with her deposition testimony, which was also designated. The trial court held a hearing on the motion to dismiss and entered an order dismissing the complaint with prejudice, but did not rule on the motion to strike. The Currys now appeal.

**DISCUSSION AND DECISION**

The Currys appeal claiming that the trial court erred by dismissing their complaint with prejudice. In particular, the Currys argue that: (1) Gladys never made a worker's compensation claim with D.A.L.L. or its worker's compensation carrier for her injuries; (2)

3

Gladys was not on the clock with her employer at the time of her injury; and (3) although Gladys came to the restaurant for the employer-called meeting, her injuries occurred before the meeting had begun and while she was having a meal outside the scope of the employment-related activity.

Our Supreme Court has stated the following regarding the standard of review in situations such as this:

> When an employer defends against an employee's negligence claim on the basis that the employee's exclusive remedy is to pursue a claim for benefits under the Indiana Worker's Compensation Act, the defense is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12 (B)(1). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support. In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts.
>
> * * *
>
> A review of the case authority shows that the standard of appellate review for Trial Rule 12(B)(1) motions to dismiss is indeed a function of what occurred in the trial court. That is, the standard of review is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record."
>
> If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. Under those circumstances no deference is afforded the trial court's conclusion because appellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law. Thus, we review *de novo* a trial court's ruling on a motion to dismiss under Trial Rule 12(B)(1) where the facts before the trial court are undisputed.
>
> If the facts before the trial court are in dispute, then our standard of review focuses on whether the trial court conducted an evidentiary hearing. Under those circumstances, the court typically engages in its classic fact-finding function, often evaluating the character and credibility of witnesses. Thus,

4

where a trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. And in reviewing the trial court's factual findings and judgment, we will reverse only if they are clearly erroneous. Factual findings are clearing erroneous if the evidence does not support them, and a judgment is clearly erroneous if it is unsupported by the factual findings or conclusions of law.

However, where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded the trial court's factual findings or judgment because under those circumstances a court of review is in as good a position as the trial court to determine whether the court has subject matter jurisdiction. Thus, we review *de novo* a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record.

*GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001) (internal quotations and citations omitted).

In this case, the trial court held a hearing on the motion to dismiss, but did not receive additional evidence. The point of contention between the parties was whether Gladys's injuries arose out of her employment or occurred in the course of the employment. Thus, in dismissing the Currys' complaint, the trial court resolved factual disputes on a paper record. We, therefore, review *de novo* the trial court's ruling here.

"[A] motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power to act." *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994). Actions taken by a court lacking subject matter jurisdiction are void. *Id*. The opponent of subject matter jurisdiction carries the burden of proving that the Worker's Compensation Board and not the trial court had jurisdiction over the matter. *Id*.

The Act provides the exclusive remedy for recovery of personal injuries arising out of and in the course of employment. Ind. Code § 22-3-2-6. "If the Act covers an injury, the

5

courts have no jurisdiction to entertain common law claims against the employer or a fellow employee." *Knoy v. Cary*, 813 N.E.2d 1170, 1171 (Ind. 2004). An injury "arises out of" employment if there is a causal connection between the injuries sustained by the employee and the duties or services performed by the injured employee. *Id*. That causal connection exists when a reasonable person would consider the injury to be the result of a risk incidental to employment or where there is a connection between the employment and the injury. *Id*. An accident leading to injury occurs "in the course of employment" when it occurs at the time and place of employment while an employee is fulfilling his or her employment duties. *Id*.

Case law involving whether injuries that occurred during after-hours work activities were compensable has evolved since the enactment of the Act. Our Supreme Court noted in *Knoy*, that in the early days of worker's compensation, injuries sustained by employees during after-hours work activities were for the most part not compensable. 813 N.E.2d at 1171. In 1957, the Supreme Court allowed recovery under the Act for an employee's death that occurred at an after-hours activity sponsored by the employer. *Noble v. Zimmerman*, 237 Ind. 556, 146 N.E.2d 828 (1957). The rationale for allowing recovery was that "employers are more and more utilizing recreational programs for their employees . . . in aiding and promoting better business relations with persons in their employ." *Id*. at 569-70, 146 N.E.2d at 834.

In a subsequent opinion by this court, *Ski World, Inc. v. Fife*, 489 N.E.2d 72, 73 (Ind. Ct. App. 1986), recovery under the Act was allowed for injuries sustained by an employee during an after-hours party for employees that was sponsored by the employer. We explained

6

that the rationale for recovery in *Noble* did not depend upon whether attendance at the party was required, but on the connection between the employee's employment and the party. *Id.* at 77. The mandatory nature of the after-hours work-related activity is not required in order for there to be recovery under the Act; rather the focus is on the connection between the employer's interests in improving the business by holding the after-hours work-related activity and the employee's employment. *Knoy*, 813 N.E.2d at 1172. If that is the situation, then the after-hours work-related activity may be incidental to the employee's employment. *Id.*

In this case, D.A.L.L. held an employee meeting attended by several employees, such as Gladys, who were not "on the clock." Gladys's deposition testimony revealed that meetings were held regularly at the restaurant, some of which were mandatory, while others were not. Some of the meetings led by the managers involved discussions of customer complaints and how to improve the business in response to those complaints, while others involved issues related to the operation of the restaurant, e.g., cleanliness issues. Gladys stated that she was on the premises to attend the meeting, but arrived early to eat a meal beforehand. Other employees were also present in advance of the meeting. We conclude that the trial court did not err by dismissing the complaint. The connection between D.A.L.L.'s interest in improving the business by holding employee meetings and Gladys's presence on the premises as an employee waiting for the meeting to begin, places jurisdiction of her claim for compensation for injuries sustained while on those premises squarely within the Act. Because of our resolution of this issue we do not address the other issue raised.

Affirmed. BARNES, J., and BRADFORD, J., concur.